**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DUNG NGOC LE,**

        **Plaintiff,**

**-vs-**                                           **Case No. 6:06-cv-1692-Orl-UAM**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## **MEMORANDUM OF DECISION**

Plaintiff Ding Ngoc Le ["Le"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying her application for Supplemental Security Income ("SSI") benefits. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

**I.**      **PROCEDURAL HISTORY**

Le protectively filed an application for Supplemental Security Income (SSI) based on disability on November 9, 1998, followed by a formal written application filed on February 2, 1999, claiming disability as of November 1975. R. 65-69. In May 1999, the Commissioner found that Le was disabled due to an anxiety-related disorder. R. 36.

On November 3, 2003, the Commissioner determined that Le's health had improved and that she was no longer disabled. R. 58-61. Le appealed this determination to a Disability Hearing Officer, who denied Le's appeal on October 6, 2004. R. 44-55. Le then requested a hearing before an

administrative law judge ("ALJ"). R. 43-43A. On May 2, 2005, the Honorable Jimmy N. Coffman, ALJ, held a 14-minute hearing on Le's claim in Orlando, Florida. R. 258 - 69. Le was not represented at the hearing. R. 260. The ALJ heard testimony from only Le.

On August 31, 2005, the ALJ issued a decision that Le was not disabled and not entitled to benefits. R. 11-20. Following a review of the medical and other record evidence, the ALJ found that Le's medical condition had improved and that she had the residual functional capacity ["RFC"] to perform the full range of the physical exertional requirements of light work. R. 18-19, Findings 5, 14. Applying the Medical-Vocational Guidelines, the ALJ concluded that Le was not disabled. R. 19, Finding 15.

The Appeals Council denied review on October 13, 2006. R. 3-6. On October 31, 2006, Le timely appealed the Appeals Council's decision to the United States District Court. Docket No. 1. On January 29, 2007, Le filed in this Court a memorandum of law in support of her appeal. Docket No. 11. On April 16, 2007, the Commissioner filed a memorandum in support of his decision that Le was not disabled. Docket No. 15. The appeal is ripe for determination.

## II.   THE PARTIES' POSITIONS

Le assigns two errors to the Commissioner. First, she claims that the Commissioner erred in failing to obtain testimony from a vocational expert ("VE") that Le could perform other work in the national economy. Second, Le claims that the Commissioner erred by failing to develop the record regarding her pain.

The Commissioner argues that substantial evidence supports her decision to deny disability. First, the Commissioner argues that he permissibly used the Medical-Vocational Guidelines [the

"grids"] in this case. Second, the Commissioner argues that the ALJ did not fail to fully develop the record.

### III.    THE STANDARD OF REVIEW

#### A.    AFFIRMANCE

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

**B.     REVERSAL**

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

**C.     REMAND**

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.

*Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is

a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at 1090 - 92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*, Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095. With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. *Id.*

## V.     APPLICATION AND ANALYSIS

### A.     THE FACTS

Le was born on September 7, 1954, and was 49 years old on the date of the ALJ's decision. R. 8, 65. She has a high school education (obtained in Vietnam), and has no relevant work experience. R. 205-06. She emigrated to the United States in 1975 and speaks English. R. 205-06, 260, 265.

On May 22, 1999, when Le was previously found to be disabled, she was 44 years old. R. 36. She alleged disability due to fatigue, heart problems and hernia. The medical evidence reveals that the claimant did not receive ongoing medical care for her alleged impairments. R. 136-43. On May 4, 1999, Le underwent a consultative examination conducted by Nitin Hatt, M.D. R. 131-35. She reported nervousness and reported being tired. *Id*. She appeared ill and undernourished. *Id*. She was found to have malnutrition and anxiety neurosis. *Id*. On May 5, 1999, Le underwent a psychological

consultative evaluation conducted by William W. Austin, Psy.D. R. 160-62. Le reported intense fear, horror, helplessness, recurring nightmares and intense reaction to loud noises which reminded her of bombing. *Id*. She reported becoming very sad. *Id*. On mental status examination, she was alert, but not well oriented. *Id*. Her activities of daily living were limited. Dr. Austin opined that Le was disabled because her ability to perform activities within schedule, maintain regular attendance and be punctual within customary tolerances as well as her ability to work in coordination with or proximity to others was markedly limited. *Id*. Dr. Austin also found that Le's ability to perform at a consistent pace without an unreasonable number and length of rest periods and her ability to travel in unfamiliar places or use public transportation was also markedly limited. *Id*.

From October 1, 2002, through February 24, 2004, Le was treated by Pradip Jamnadas, M.D. R. 187-204. Le initially presented with complaints of chest pressure especially in the evenings and when lying in bed. R. 196. She sometimes experienced radiation in the left arm and tightness and numbness in both hands. *Id*. She also complained of significant chest discomfort with exertion over the last two to three weeks. *Id.* A dual isotope gated spect cardiac imaging performed on October 2, 2002, revealed a hyperdynamic left ventricle with no evidence of ischemia or infarction. R. 199-202. A bilateral carotid duplex scan performed on February 11, 2004, demonstrated mild heterogeneous plaque bilaterally with less than 30% stenosis. R. 204. Moreover, a two-dimensional Doppler echocardiogram was essentially normal with an estimated ejection fraction of 55-60%. R. 203. Progress notes demonstrate that Le continued to complain of chest discomfort precipitated by minimal exertion and associated with extreme fatigue. R. 187-193. Dr. Jamnadas determined that Le's chest discomfort was not coronary in nature. R. 188.

Le also sought treatment from Orlando Family Physicians, including Simin Salehi, M.D. from June 2003 to November 2004. R. 229-249. On July 2, 2003, Le complained of chest discomfort without radiation that lasted for 10-30 minutes. R. 241. She was assessed with chest pain, hernia inguinal, GERD, and perhaps palpitations. *Id*. Dr. Salehi on December 8, 2003, noted possible fatigue syndrome. R. 240. On March 10, 2004, a pelvic CT revealed a 4.7 cm cystic appearing mass within the central aspect of the pelvis. R. 243. No focal anterior pelvic wall hernia was identified. *Id*. On March 24, 2004, Le saw Dr. Salehi for complaints of vaginal pain, which stated she had experienced for years but was told by a gynecologist one and one-half years ago was normal. R. 235. She was diagnosed with cervicitis, and was prescribed medication. *Id*. On March 24, 2004, Dr. Salehi also wrote a note on a prescription pad that Le had fatigue syndrome, an abdominal mass and was unable to work. R. 234. Dr. Salehi also referred Le to a pulmonologist because she was experiencing shortness of breath. *Id*.

Since May 1999, Le has not been treated by a mental health professional. R. 157. On October 2, 2003, Le underwent psychological consultative evaluation conducted by William W. Austin, Psy.D. R. 157-59. As part of her medical history, Le informed Dr. Austin that she has a recurrent hernia that causes pain when pushing, pulling, climbing or coughing, but she refused to have hernia surgery. R. 157. Le also reported a history of mitral valve problems. *Id*. She further reported having problem with stomach acid, fatigue and right shoulder pain. *Id*. She reported taking Protonix, an unknown muscle relaxer, vitamins and supplements. *Id*. Le denied any depression or anxiety. R. 158. She reported improvement of her memory with Gingko Biloba and, while she is still sensitive to loud noise, her overall condition was greatly improved, if not resolved. *Id*. On mental status examination,

Le was alert and oriented in all spheres. *Id*. She was appropriately dressed and groomed with basic functioning and hygiene. *Id*. Her behavior was appropriate. *Id*. There were no fine motor shakes or tremors. *Id*. She did not demonstrate any gait abnormalities or gross motor coordination problems. *Id*. There were no signs of psychosis. *Id*. Her attention and concentration were sustained. *Idi* Her mood appeared adequate and her affect was full ranged. *Id*. Her recent and remote memory appeared adequate. *Id*. As to her daily activities, Le reported being able to take care of her personal needs except that she requires some help showering due to fatigue. *Id*. She goes to church, reads the Bible, interacts with roommate and goes out with her children. *Id*. She reported eating three meals a day and snacking in between. *Id*. She goes to doctors' appointments and is able to use a microwave, water the flowers and wipe the counters. *Id*. Dr. Austin did not diagnose any mental condition or limitations. R. 159.

On October 16, 2003, State Agency physician M. Farrell completed a Physical RFC Assessment form. R. 162-68. Dr. Farrell provided a primary diagnosis of GERD [gastoesophageal reflux disease] and a secondary diagnosis of MVP [mitrol valve prolapse]. R. 163. He opined that Le was limited to lifting 20 pounds occasionally, lifting 10 pounds frequently, could stand/walk 6 hours in an 8 hour workday, and could sit for 6 hours in an 8 hour workday. R. 164.

On October 30, 2003, Ed Kamin, Ph.D. completed a Mental RFC Assessment form. R. 169-171. Dr. Kamin opined that Le was not significantly limited in any area. *Id*.

On June 30,2004, Le underwent a psychological consultative evaluation conducted by Michael Harrell, Ph.D. R. 205-206. Le complained of reflux disease, fatigue and abdominal pain. R. 205. On mental status examination, Le was alert and oriented in all spheres. R. 206. Her

grooming and hygiene were excellent. *Id*. She was cooperative and spoke in a clear voice with adequate diction. *Id*. Her memory was moderately accurate. *Id*. Her thought processes were logical and coherent. *Id*. Her mood was mildly depressed, but she did not show extreme emotions such as weeping. *Id*. Her attention and concentration were adequate. *Id*. She was able to coordinate and did not require any assistance for ambulation. *Id*. The claimant denied receiving any mental health treatments or hospitalizations. *Id*. She denied taking any medications. *Id*. Dr. Harrell rendered an Axis I diagnosis of anxiety disorder, NOS, moderate, rule out somatization disorder, with anxious features. *Id*. He assessed her GAF at 65.[1] *Id*.

On August 4, 2004, Violet A. Stone, M.D. completed a Physical RFC Assessment for. R. 221-228. Dr. Stone gave a primary diagnosis of fatigue syndrome and a secondary diagnosis of atypical chest pain. R. 221. She opined that Le was limited to lifting 20 pounds occasionally, lifting 10 pounds frequently, could stand/walk 6 hours in an 8 hour workday, and could sit for 6 hours in an 8 hour workday. R. 222.

On August 7, 2004, Pamela D. Green, Ph.D. completed a Psychiatric Review Technique form. R. 207-220. Dr. Green opined that Le had no severe impairments (R. 207), and no functional limitations (R. 217).

---

[1] The Global Assessment of Functioning (GAF) Scale rates the patient's psychological, social and occupational functioning on a hypothetical continuum of mental health and illness, without including impairment in functioning due to physical or environmental limitations. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (American Psychiatric Association 4th Ed. 1994) ["DSM-IV"] at 32. A GAF code of 61 - 70 describes "[some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning... but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32 (emphasis removed).

A pelvic ultrasound on September 17, 2004, revealed a 2.2 cm uterine fibroid and 4.8 cm cyst behind the uterus. R. 244. At a follow up appointment, Le also complained of breast pain, which was determined to be hormonal. R. 231.

A spirometric pulmonary function study performed on October 11, 2004, was essentially normal. R. 248. Examination by pulmonologist Ganesh K. Akula, M.D., revealed a small airway dysfunction which was probably due to bronchospasm. R. 249. She was prescribed medication. *Id*.

### B.   THE ANALYSIS

#### 1.   <u>Failure to Obtain Testimony from a Vocational Expert</u>

Le argues that the ALJ erred in failing to elicit testimony regarding Le's nonexertional limitations. Le points to her diagnoses of cervicitis, anxiety disorder, chronic pain reflux, chronic fatigue, chest pain, bilateral hernia, GERD, bronchospasm, and painful nodule. Doc. 11 at 8. The ALJ, however, found that Le only had the following medically determinable impairments: atypical chest pain, gastroesophageal reflux disease, dizzy spells and pain. R. 16. He further found that these impairments significantly interfere with Le's ability to perform work-related activities and, therefore, were severe but not severe enough to meet or equal one of the impairments in the listings. *Id*.

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201

(11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote,* 67 F.3d at 1558.

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements). Exclusive reliance is not appropriate, however, "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987).

In this case, although the ALJ found that Le's non-exertional impairments were "severe" at Step Two of the Five Step evaluation,[2] he neverthless found that Le could perform the full range of light work. R. 19. Because Le's non-exertional impairments did not significantly limit her ability to work, the ALJ permissibly relied exclusively on the grids.

## 2. Developing the Record Regarding Le's Pain

Le argues that the ALJ erred in failing to develop the record by inquiring into various factors identified by the regulations. Specifically, Le argues that the medical evidence of a pelvic nodule and objective medical evidence of severe alleged pain required the ALJ to make a pain finding based on a fully developed record. The Commissioner argues that the evidence supported the ALJ's finding

---

[2] *See* 20 C.F.R. §§ 404.1520, 416.920 regarding the Five Step evaluation.

that Le was not fully credible regarding her subjective complaints and, therefore, the ALJ was not required to further develop the record.

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1529. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

The ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right. *See* 42 U.S.C.§ 406; *Cowart*, 662 F.2d at 734. The obligation to fully and fairly develop the record exists if a claimant has waived the

right to retained counsel, and even if the claimant is represented by counsel. *See Cowart*, 662 F.2d at 735 - 36.

Le tries to fault the ALJ for failing to ask about her daily activities, the location, duration, frequency, and intensity of her pain, any precipitating or aggravating factors, medication or other pain treatments, and limitations due to pain. Doc. 11 at 9. At the hearing, the ALJ asked Le "what part of your body was bothered?" and "what part of your body was keeping you from working?" R. 262. Le responded by identifying fatigue, nervousness with loud noise, and vomiting, sadness or sleeplessness when receiving bad news. R. 262-63. The ALJ also asked about what medications Le was taking. R. 264. Le responded that she took multivitamins, iron, and Protonix for acid reflux. *Id*. He further inquired about Le's daily activities. R. 264-68. The ALJ also specifically asked Le about the pain in her chest, and she denied having pain, only a heavy feeling. R. 268. The Court finds that the ALJ fulfilled his duty to develop the record regarding Le's pain and her limitations due to pain.

## VI.   **CONCLUSION**

For the reasons stated above, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner and close the case.

**DONE AND ORDERED** in Orlando, Florida on January 10, 2008.

*Donald P. Dietrich*
DONALD P. DIETRICH
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Laurie G. Remter, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia         30303-8920

The Honorable Jimmy N. Coffman
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL             32817